## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HENRY BARBER,** | : | |
| **Plaintiff** | : | **CIV. ACTION NO. 3:25-CV-938** |
| **v.** | : | **(JUDGE MANNION)** |
| **JOHN DOE #1,** *et al.,* | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

This is a prisoner civil rights case filed pursuant to 42 U.S.C. §1983 that is proceeding on plaintiff's amended complaint. For the reasons set forth below, the amended complaint will be dismissed with prejudice and this case will be closed.

### I.    BACKGROUND

Plaintiff, Henry Barber, filed this case on May 28, 2025. (Doc. 1). On June 26, 2025, the court dismissed his complaint for failure to state a claim upon which relief may be granted and granted him leave to file an amended complaint. (Docs. 9-10). Barber timely filled an amended complaint on July 14, 2025. (Doc. 11). The amended complaint is now before the court for a screening review pursuant to 28 U.S.C. §1915A(a) and 28 U.S.C. §1915(e)(2)(B)(ii). Barber is currently incarcerated in Forest State

Correctional Institution ("SCI-Forest"), but he was incarcerated in Rockview

State Correctional Institution ("SCI-Rockview") when the incident that gives

rise to this case occurred.

Barber's amended complaint alleges that two John Doe correctional

officers placed him in handcuffs while he was in his cell in SCI-Rockview on

October 13, 2023. (*Id.* at 5). The handcuffs were allegedly "so tight that they

cut off circulation to [Barber's] hands, causing severe pain and discomfort."

(*Id.*) Barber asked the officers to remove the handcuffs as they were leaving

his cell, but they declined to do so. (*Id.*) One of the officers purportedly told

Barber, "that's how black people] live." (*Id.*) The officers allegedly locked the

cell and left the prison. (*Id.*) Barber allegedly remained in handcuffs for

approximately five hours before a different correctional officer removed

them. (*Id.* at 5-6). Barber requested medical attention, but the officer denied

the request. (*Id.* at 6).

Sometime between October 16, 2023, and October 18, 2023, Barber

sent a request for medical attention to defendant Woodring, the prison's

deputy superintendent. (*Id.*) Woodring did not respond. (*Id.*) Barber was then

seen for a medical appointment on October 18, 2023, by defendant Bollinger,

a registered nurse. (*Id.*) Barber informed Bollinger that he was experiencing

pain and numbness in his arms, hands, and wrists. (*Id.*) Bollinger allegedly "attempted to minimize" the injuries and did not report them to superiors. (*Id.*)

Barber was given medical attention for his right hand again approximately eleven months later, between September 18, 2024, and September 25, 2024, while he was housed in SCI-Forest. (*Id.*) Officials scheduled him for an MRI, to assess swelling and soft tissue damage in the hand. (*Id.*) The MRI was subsequently rescheduled and had not been performed as of the date of the amended complaint. (*Id.*) Barber was also given x-rays on September 25, 2024, and September 26, 2024. (*Id.*) Officials did not give Barber the results of the x-rays and again "tried to minimize" his pain and injuries. (*Id.*)

The amended complaint alleges that Barber has received medical attention on several occasions to treat "unresolved" swelling and soft tissue damage in his right hand and possible blood clots in the hand. (*Id.*) On or around March 10, 2024, or March 11, 2024, he was taken to Dubois Hospital, for an examination of the hand. (*Id.*) He was then taken to Butler Hospital on March 20, 2025,[1] where medical professionals anesthetized him and placed

---

[1] This alleged visit is noted in the sentence immediately following the sentence about the March 11, 2024, hospital visit. It is unclear whether the date in 2025 is a typographical error that is meant to refer to a hospital visit in March 2024. The court has provided the dates as written in the amended complaint.

a camera down his throat to assess the possible blood clotting issue. (*Id.* at 6-7). As a result of this treatment, he was prescribed Lovenox[2] as a blood thinner and Gabapentin for pain management. (*Id.* at 7). Barber has also allegedly been prescribed physical therapy beginning in December 2024, which he has attended twice in March 2025 and June 2025. (*Id.*) Barber alleges that he continues to suffer "ongoing pain, swelling and other issues" as a result of the John Does' actions. (*Id.*)

Barber alleges that the John Does' actions of leaving him in handcuffs for approximately five hours and other officials' responses to this action have violated his civil rights in various ways. (*Id.* at 8). He names as defendants the two John Doe correctional officers, Woodring, Bollinger, and K. Brubaker, SCI-Rockview's facility grievance coordinator, who purportedly responded to his relevant grievances. (*Id.* at 3). Barber seeks compensatory damages from all defendants. (*Id.* at 8).

## II.    DISCUSSION

This court must review a complaint when "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). If a complaint fails to state a claim upon which relief

---

[2] The amended complaint states that he was prescribed "Lovinex." (*Id.*) The court assumes this is meant to refer to Lovenox, a common anticoagulant.

may be granted, the court must dismiss the complaint. *Id.* §1915A(b)(1). The court has a similar screening obligation regarding actions filed by prisoners proceeding *in forma pauperis*. *Id.* §1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted.").

In screening legal claims under Sections 1915A(b) and 1915(e)(2)(B), the court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g.*, *Coward v. City of Philadelphia*, 546 F. Supp. 3d 331, 333 (E.D. Pa. 2021); *Smith v. Delaware*, 236 F. Supp.3d 882, 886 (D. Del. 2017).

To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" to show that his claim is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679.

When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *Id.*

However, the court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Section 1915A and 1915(e)(2). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff's claims are filed pursuant to 42 U.S.C. §1983. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United

States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. *Id.*

Barber's complaint alleges several constitutional violations arising out of defendants placing him in handcuffs for five hours. (Doc. 1). His claims will be dismissed because they suffer from the same pleading defects that were present in his original complaint. As the court previously noted, although the alleged conduct of leaving him in handcuffs for several hours in his cell is disturbing and unprofessional if true, use of handcuffs for this amount of time simply does not amount to a violation of his constitutional rights absent any allegations that the use of the handcuffs caused him

medical harm. *See, e.g.*, *Abdullah v. Seba*, 658 F. App'x 83, 85 (3d Cir. 2016) (concluding that plaintiff could not establish cruel and unusual punishment where "[h]e was kept in restraints for 24 hours," he "was checked every two hours by prison officers and every four hours by medical personnel," and he "offered no medical complaints"); *Mollett v. Pa. Dep't of Corrs.*, No. 1:23-CV-2084, 2024 WL 232164, at *3 (M.D. Pa. Jan. 22, 2024) (finding that complaint failed to state a claim where prisoner alleged that he was placed in handcuffs for four and a half hours and did not allege any medical complaints during that period).

Barber has not alleged any additional facts in the amended complaint from which it could be inferred that he suffered medical harm. His only allegations of harm are conclusory assertions that he suffered pain, swelling, soft tissue damage, and loss of circulation. It does not appear from the amended complaint that any of these issues required medical care. Although Barber alleges numerous visits to medical professionals, these visits occurred many months after the alleged handcuffing incident and there is no allegation that any medical professionals diagnosed him as having medical issues caused by the handcuffing incident during the visits. Any causal connection between the handcuffing incident and the pain and blood clots Barber was experiencing months later appears to be based on nothing more

than speculation. There are also no allegations to support a clam of deliberate indifference to a serious medical need: Barber's allegations of injuries are conclusory in nature, and it appears that he has been given regular medical treatment throughout the relevant period. Accordingly, the court will dismiss his complaint for failure to state a claim upon which relief may be granted.

Before dismissing a civil rights complaint for failure to state a claim, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Here, the court will deny further leave to amend as futile. Barber has had multiple opportunities to state a claim upon which relief may be granted and has failed to do so.

## III. CONCLUSION

For the foregoing reasons, the court will dismiss Barber's complaint with prejudice and close this case. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

**Dated:   October 17, 2025**
25-938-02

9